THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:23-cr-00002-MR-WCM

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) **O R D E R** |
| DANNY DALE TREMBLE, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduced Sentence under Amendment 821. [Doc. 34].[1]

## I.  BACKGROUND

Between October of 2013 and December of 2021, the Defendant Danny Dale Tremble executed a scheme to defraud, embezzling at least $1.35 million from Azalea Management and Leasing, Inc., a business located in Asheville, North Carolina. [Doc. 20: PSR at ¶ 11]. The Defendant also failed to report any of the embezzled income on his tax returns, causing a federal tax loss of more than $288,000. [Id. at ¶ 12]. The Defendant used

---

[1] See pages 4-6 *infra* for a discussion regarding the status of this motion.

the embezzled funds to buy a boat, a camper, and a car, among other purchases. [Id. at ¶¶ 24-27].

The Defendant was charged through a Bill of Information with wire fraud, in violation of 18 U.S.C. § 1343, and with filing a false tax return, in violation of 26 U.S.C. § 7206(1). [Doc. 1]. The Defendant entered into a written plea agreement with the Government and pled guilty to both offenses. [Doc. 2 at ¶ 1; Doc. 10].

In advance of sentencing, the Court's probation office prepared a presentence report (PSR), which calculated a total offense level of 20. [Doc. 20: PSR at ¶ 58]. The probation office assigned the Defendant zero criminal-history points, resulting in a criminal history category of I and an advisory guideline range of 33 to 41 months' imprisonment. [Id. at ¶¶ 63, 90]. The Court sentenced the Defendant to 41 months' imprisonment, at the high end of the advisory guideline range. [Doc. 28 at 2].

The Defendant now moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Part B of Amendment 821 to the United States Sentencing Guidelines. [Doc. 34]. The Government consents to the Defendant's Motion. [Doc. 35].

## II. STANDARD OF REVIEW

Pursuant to § 3582(c)(2), the Court may modify a term of imprisonment that was based on a sentencing range that has subsequently been lowered by the Sentencing Commission, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

When addressing a § 3582(c)(2) motion based on a retroactive guidelines amendment, the Court follows a two-step process. At the first step, the Court must "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019) (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)). In so doing, the Court "begin[s] by determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." Martin, 916 F.3d at 395 (quoting Dillon, 560 U.S. at 827). At the second step, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at

3

step one is warranted in whole or in part under the particular circumstances of the case." Martin, 916 F.3d at 395 (quoting Dillon, 560 U.S. at 827).

## III. DISCUSSION

This case presents a very troubling issue. Upon Amendment 821 going into effect the Court entered a Standing Order regarding the appointment of counsel for prisoners identified by the United States Sentencing Commission as potentially eligible for relief thereunder. In re: Retroactive Application of U.S.S.G. Amendment 821 Eff. Nov. 1, 2023, No. 1:23-mc-00020-MR (W.D.N.C. Nov. 1, 2023). As the screening for conflicts for the Federal Defender's Office (FDO) had already been undertaken in the course of the original prosecution, with the assignment of CJA panel attorneys to some defendants and the representation by the FDO of others, the Court directed that the FDO was assigned to represent only those prisoners in 821 motions who were represented by FDO attorneys at sentencing. See id. at ¶ 2. For those prisoners previously represented by CJA panel attorneys, the Standing Order directed the FDO to direct such cases to the defendant's prior attorney, or to another CJA panel attorney if the prior attorney was unavailable. See id. at ¶ 3. As such, the FDO has never been appointed to represent any prisoner in an 821 matter where that prisoner was not previously represented by an FDO attorney at sentencing.

4

The Court has now identified 24 cases, including this one, in which an FDO attorney has filed an 821 motion for which he was not appointed. This includes now representing prisoners who were co-defendants in a single indictment. Even more troubling is the fact that, by taking on this representation, the FDO attorney provided himself access to sealed material, including Presentence Reports and § 5K1.1 motions, to which such counsel otherwise would have had no basis to access.

At first blush, it would appear that the simple solution to this problem would be to strike the improper pleading. In the case of a prisoner who is entitled to relief, however, such action would punish the prisoner for the misdeeds of the attorney. As such, the Court in its discretion addresses herein the merits of whether the Defendant is entitled to relief on the grounds identified.

The FDO of this District is strongly admonished to abide by the Orders and directives of this Court. Moreover, the FDO of this District is strongly admonished not to obtain or seek sealed materials in any case wherein the FDO has not been appointed. This particularly pertains to seeking sealed materials related to co-defendants in the same indictments and even checking to see whether such "potential clients" cooperated against one another. The FDO of this District is encouraged to be much more attentive

5

to the rules regarding conflicts of interest, the rules pertaining to sealed materials, and the reasons therefor.

The Court considers the merits of the Defendant's present situation as follows. At the time that the Defendant was sentenced, a defendant with zero criminal history points was treated the same as a defendant with one criminal history point for the purpose of calculating the criminal history category. Part B of Amendment 821, effective November 1, 2023, amended the offense-level calculation for certain zero-point offenders. As revised, § 4C1.1 provides for "a decrease of two levels . . . for offenders who did not receive any criminal history points . . . and whose instant offense did not involve specified aggravating factors." U.S.S.C. Supp. to App'x, Am. 821 at 242; U.S.S.G. § 4C1.1 (2023).[2] The Sentencing Commission has made Part B, Subpart 1, of Amendment 821 retroactively applicable, authorizing eligible

---

[2] Specifically, a defendant is not eligible for this reduction if (1) he or she received a terrorism adjustment under U.S.S.G. § 3A1.4; (2) he or she used violence or credible threats of violence in connection with his or her offense; (3) the offense resulted in death or serious bodily injury; (4) the offense was a sex offense; (5) he or she personally caused substantial financial hardship; (6) he or she possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon in connection with the offense; (7) the offense was an offense involving individual rights covered by U.S.S.G. 2H1.1; (8) he or she received a hate-crime-motivation or vulnerable-victim adjustment, U.S.S.G. § 3A1.1; (9) he or she was convicted of a serious-human-rights offense, U.S.S.G. § 3A1.5; (10) he or she received an aggravating-role adjustment, U.S.S.G. § 3B1.1; or (11) he or she was engaged in a continuing criminal enterprise as defined in 18 U.S.C. § 848. Id.

defendants to seek a discretionary sentence reduction under § 3582(c)(2). U.S.S.G. Amend. 825; see U.S.S.G. § 1B1.10(d). This retroactivity amendment provides that any order reducing a defendant's sentence must have "an effective date of February 1, 2024, or later." U.S.S.G. Amend. 825; see also U.S.S.G. § 1B1.10 cmt. n.7.

The Defendant is eligible for relief under Amendment 821. At the time of sentencing, the Defendant was assessed no criminal history points, and none of the exceptions precluding eligibility for a sentencing reduction apply. With the revision to § 4C1.1 under Amendment 821, the Defendant would receive a decrease of two offense levels, reducing his total offense level to 18. A total offense level of 18, when combined with a criminal history category of I results in a revised advisory guidelines range of 27 to 33 months.

Having determined the amended guideline range that would have been applicable to the Defendant had the relevant amendment been in effect at the time of the initial sentencing, the Court now turns to the § 3553(a) factors to determine whether the reduction authorized by Amendment 821 is warranted in whole or in part.

Here, the Defendant's post-sentencing conduct supports a reduced sentence. During his period of incarceration, the Defendant has not incurred

7

any disciplinary infractions. [See Doc. 36 at 2]. Although he has not been in prison for a year, he has already participated in a number of educational programs and work assignments, including the residential drug treatment program. [Id. at 3]. The seriousness of the Defendant's offense conduct, however, must be taken into account. He embezzled more than $1.3 million from a small business over at least an eight-year period, causing serious financial hardship to several people, all to provide himself with lavish trips, a boat and vehicles, among other things. The Court notes, however, that while the Defendant's offense conduct was serious, it did not involve violence.

Considering the sentencing objectives set forth in § 3553(a), the Court finds that a reduction in the Defendant's sentence is consistent with the purposes of sentencing. Accordingly, the Court grants the Defendant's motion for a reduced sentence. In its discretion, the Court will reduce the Defendant's sentence to thirty-seven (37) months.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under Amendment 821 [Doc. 34] is **GRANTED**, and the Defendant's sentence is **REDUCED** to a term of **THIRTY-THREE (33) MONTHS**.

The Clerk of Court is respectfully instructed to prepare an Amended Judgment in accordance with the terms of this Order.

**IT IS SO ORDERED.**

Signed: May 15, 2024

*Martin Reidinger*
Chief United States District Judge